Rich, Judge,
delivered the opinion of the court:
Tliis appeal is from the Patent Office Board of Appeals which affirmed the examiner’s rejection of claims 1, 4, 6, 7, 9, 12, 15, 16, 22, 27, and 28 of appellant’s application entitled “Bolts,” serial No. 241,029, filed August 9,1951. No claims are allowed.
Appellant’s application relates to so-called “blind bolts” for securing one member to another where one of the bolt-contacting surfaces is inaccessible. Three species are disclosed. Claim 1, which is generic to all disclosed species, reads:
1. A screw bolt including: a threaded head portion and a shank portion extending axially said head portion; the said shank portion being of less cross-sectional area than said head portion at the juncture of said head portion and said shank portion, whereby a pivot ledge is formed; the said shank portion having one longitudinal part thereof parallel to the axis of said head portion; a toe extending radially said one part of said shank portion and having a flat surface paralleling and facing said ledges; the other longitudinal part of said shank portion being tapered at an angle to said ledge such that the greatest-transverse dimension in the plane of said flat surface is substantially equal to the greatest transverse dimension in said shank portion in the plane of said ledge.
The first species is of unitary construction, termed a “solid bolt,” the second is of split construction comprising two longitudinal sections with a ball pivot engaging the flat surfaces of the sections so that the sections may slide over each other (like scissors) into engaging position, termed a “slide bolt,” and the third species is a dual section bolt, termed a “spread bolt,” which differs from the second species in that the two sections swing away from each other at one end into clamping position about a ball pivot instead of sliding into such position, so that the flat surfaces of the shank portions are in contact only when the bolt is in collapsed position for insertion into the hole.:
The second species or “slide bolt” represents the elected species, but the Board .of Appeals acted on the merits of claims to all of the embodiments. All the claims were rejected as unpatentable over the prior art. The question before us is whether the state of the art provides a proper basis for the rejection of appellant’s claims.
*727 Each of the claims includes a recitation directed to the difference in cross-sectional dimensions of the threaded head and the. shank portion of the bolt which results' in the formation of a shoulder which appellant designates a “pivot ledge” on which the bolt pivots when'the ledge contacts the edge of the hole, which aids in seating ■the toe. Appellant states in his brief: • •
Thus, the essence of this invention, which is common to the three types of bolts described is:
'• “A ledge formed in the plane common to the head and an axially extending shanlr, and a pivot in that plane.”
To be more specific, the head portion of applicant’s bolt is threaded and of greater diameter than the hole through which the shank and toe are to be inserted. The shank, ■ therefore, is of lesser diameter than'the head portion so that a shoulder is formed at the juncture. One side of the shank extends at right angles to the shoulder, and this side terminates in the toe which is shaped to engage the surface inaccessible to the operator. The other side of the shank is tapered longitudinally to permit the toe to be inserted without jamming. To insert the bolt into the hole, the head must be cocked slightly in relation to the surface facing the operator. This means that one point on the shoulder will contact the upper plate before any other point on the shoulder. Appellant terms movement about this point pivoting, and that portion of the shoulder the “pivot ledge.” The “pivot ledge” forms a fulcrum about which the bolt pivots until the toe moves into position to engage the rim of the hole on the inaccessible side.
The bolt would now be ready to receive the nut. If the plates to he bolted are in a horizontal plane the entire operation may be performed simply by dropping the bolt into the hole and placing the nut thereon. In other positions the bolt would, of course, have to be held with the pivot ledge in contact with the plate surface sur•rounding the hole.
The references relied on are:'
Kennedy, 551,931, Dec. 24, 1895
Glauber, 594,526, Nov. 30, 1897
Kling, 1,055,330, Mar. 11, 1913
■Knapik, 1,400,364, Dec. 13, 1921
Griffin (British patent), 175,707, Mar. 2,1922
Generic claims 1 and 27, and claims 4 and 6 which are specific to ■the “solid bolt,” were rejected as unpatentable over Knapik in view of Kennedy or Glauber. Knapik discloses a solid blind bolt which is generally similar to the “solid bolt” shown and described by appellant, but lacks a shoulder at the juncture of the head and shank portions. Kennedy discloses a stove pipe and metal joint fastener suit *728 able for blind use formed of two sliding sections joined by a transverse pivot, the “toe” of the fastener formed by the shank of each section being bent at nearly a right angle to the axis of the threaded end. The threaded- ends of the sections are of larger diameter than the unthreaded portions with the result that a shoulder is formed at the junction of the two portions. Glauber shows a pipe coupling comprising two longitudinal sections each having a threaded portion and a shank portion of lesser diameter extending axially -therefrom, thereby forming a shoulder. The ends of the shank portion include toe portions extending radially therefrom in opposite directions for engagement with the inside surface of the article to which the coupling is to be secured. The two sections of the coupling are in pivotal engagement at a point below the threaded portion, but operate like appellant’s “spread bolt” rather than like his “slide bolt.” The board in rejecting claims 1, 4, 6, and 27 relied on the latter two patents as suggesting that the threaded head portion of the Knapik bolt be formed with a larger diameter than the shank portion, thereby providing an integral shoulder or ledge at the juncture. Appellant contends, however, that Knapik is ineffective as even a basic reference because, (1) Knapik lacks a ledge between the shank and the threaded portion, (2) there is no contemplation by Knapik of “a toe with a flat surface paralleling and facing said ledge with a greatest transverse dimension substantially equal to the greatest transverse dimension of the shank portion in the plane of said ledge,” (3) the taper of the Knapik bolt starts within the plate being bolted, making it “inoperative for the purpose intended by appellant,” and (4) if a nut is screwed down on Knapik to form a ledge at the plane common to the head and the shank, the ledge thus formed will frevent the bolt from being inserted.
We are constrained to disagree with all four of appellant’s contentions. There appears to be no essential difference between-the disclosure of the Knapik bolt and appellant’s bolt except the “pivot ledge” formed at the junction between the threaded portion and the shank. Appellant’s limitation to a “toe * * * with a greatest transverse dimension substantially equal to the greatest transverse dimension of the shank portion in the plane of said ledge” appears to be nothing more than the preferred proportions of Knapik which would be obvious to one skilled in the art, since it is clearly desirable to have both the toe and the shank of the largest possible diameter for strength, and at the same time both the toe and the shank must fit through the same hole, resulting in substantially equal transverse dimensions. By the same token, a modification of the Knapik bolt so that the shank taper starts just outside the plate being bolted (at the “pivot ledge” location) would not require the unobvious, for one *729 skilled in the art would quickly realize that this is necessary to allow the bolt to fit into the hole without excessive sacrifice of shank diameter and corresponding strength reduction. No merit is seen in appellant’s fourth contention that screwing down a nut on Knapik to the point where the shank begins will prevent the bolt from being inserted, for it is evident that one need not even have the skill of the nut and bolt art to realize that the distance between the toe and the toe-facing surface of the nut must be at least equal to the depth of the hole before the bolt will work, and one would simply choose a bolt with a longer shank if he desired the threaded portion to remain outside the hole. For the above reasons we feel that Knapik is at least valid as a basic reference, albeit there are differences. No rejection was predicated upon Knapik alone, so we may reasonably assume that the Board of Appeals felt that it would not be obvious to one skilled in the art to modify Knapik’s structure to include a “pivot ledge” without further teaching.
We now examine the Kennedy and Glauber patents to determine whether they can properly be combined with the basic reference, Knapik, to suggest that the threaded head portion of Knapik be made, of greater diameter than the shank to provide a “pivot ledge.” Kennedy’s fastener appears to be analogous art, i.e. a blind fastener, and a ledge or shoulder is clearly seen between the threaded head and the shank, but because there is no teaching of the use of the ledge as a pivot point about which to move the “toe” into engagement position, we feel that Kennedy cannot be said to suggest what appellant is claiming. Glauber’s structure is a pipe coupling (for connecting a pipe to a vessel) rather than a bolt, raising doubts as to whether it is analogous art. Even if analogous, we feel that Glauber cannot properly be combined with Knapik to reject appellant’s claims 1, 4, 6, and 27 because, as in Kennedy, there is no' indication that the ledge formed by the enlarged threaded section can be used as a “pivot point”; rather, it appears that the enlarged threaded section of Glau-ber’s structure merely prevents the coupling from falling through the hole after it has been fully opened into its operating position. We hold, therefore, that claims 1, 4, 6, and 27 were not properly rejected as unpatentable over.Knapik .in view of either Kennedy or Glauber.
Claims 1, 7, 9, 12, 22, and 27 were also rejected as unpatentable over either Glauber or Griffin. The rejection based on Glauber may be dismissed for the reasons set forth above, i.e., there is no teaching of the use of the ledge as a “pivot point” to aid in engaging the “toe.” Griffin discloses several species of two-piece blind spread bolts, but, like the references previously discussed, lacks the teaching of a “pivot ledge” as used by appellant. Griffin has a projection or collar be *730 tween the shank and the threaded portion but his reason for using it is only “To prevent the bolt slipping through the bolt hole before the nut is screwed on * *
Claims 1, 6, 7, 9, 12, 15, 16, 22, 27, and 28 were also rejected as un-patentable over Kling in view of Kennedy or Glauber. Kling discloses several species of blind slide bolts but, again, lacks a teaching of a “pivot ledge.” Both Kennedy and Glauber have been discussed, supra, and shown not to supply this lack.
Appellant’s improvement in blind bolts is neither disclosed nor fairly suggested by the references individually or in combination. Though the modification over the prior art to achieve applicant’s novel result seems slight in the light of hindsight wisdom, we believe the claimed subject matter did not arise merely from the ordinary skill of the art. The fastener art can aptly be described as “crowded,” but applicant seeks protection only on a' narrow improvement which we feel merits a patent. Doubt as to patentability should be resolved in favor of the applicant. In re Hummer, 44 CCPA 814, 241 F. 2d 742, 113 USPQ 66.
The decision of the Board of Appeals is reversed. .