Wolfgang **BAENITZ** and Chemische
Werke Witten, Appellants,

v.

David L. **LADD**, Commissioner of Patents,
Appellee.

No. 19275.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 13, 1965.

Decided Jan. 6, 1966.

Mr. Paul M. Craig, Jr., Washington,
D. C., for appellants.

Mr. J. F. Nakamura, Atty., U. S. Patent Office, for appellee. Mr. Clarence W.
Moore, Sol., U. S. Patent Office, was on
the brief, for appellee.

Before PRETTYMAN, Senior Circuit Judge, and DANAHER and LEVENTHAL, Circuit Judges.

PRETTYMAN, Senior Circuit Judge:

■ This is a patent case. The litigation centers around claims which relate to a process for producing hard and brittle fats, suitable for pharmaceutical purposes, by esterifying a saturated fatty acid having 10 to 18 carbon atoms per molecule with an excess of glycerine in the presence of an esterification catalyst. The application pointed out that the melting point of the finished product depends upon the amount of excess glycerine used. The essence of the claimed invention is a method of controlling, directly and accurately, the melting point of the fats— an alleged "new use of a known process". The main issue before us is the sufficiency of the evidence in support of the District Court's holding that the subject matter of the invention as a whole would have been obvious at the time of the invention to a person having ordinary skill in the art.[1]

The Patent Office, relying on three existing patents and several textual publications in the field, determined as a factual matter that the claimed invention would have been obvious to one skilled in the art. Applying the pertinent statute [2] to this factual determination, the Board of Appeals denied the claims for failure to define a patentable invention. After a trial de novo the District Court agreed. We find no reversible error.

■ Appellants Baenitz and his assignee (Chemische Werke Witten) [3] argue that the District Court improperly relied on documentary material neither offered nor received in evidence during the trial. The disputed item is two pages of a technical treatise by Alton E. Bailey, an authority in the field of chemistry,

entitled Industrial Oil and Fat Products. Nowhere in the court's opinion did it specifically allude to the disputed passage. The only direct mention of that book was when the judge incorporated the definition of "hydroxyl number" from another portion, one which had been offered and received in evidence at the trial. The page thus used was a defendant's exhibit. Appellants insist that the court must have relied upon the other pages, because, they say, these pages were attached to defendant's brief and there was no other evidence supporting the finding. The Commissioner responds by pointing to other evidence. Moreover, in litigation involving a scientific subject, references are frequently made to authoritative published works in that science without presenting the volume in evidence; courts frequently do so.[4] Baenitz manifested a realization of this principle when he attached to his reply brief after trial a page from Chemistry of Organic Compounds by Carl R. Noller, a book which was neither offered nor received in evidence at trial. Moreover it appears that the only fact allegedly taken from the disputed passage is the existence of 80 per cent glycerine, which fact seems to be common knowledge, appearing in the Encyclopedia Britannica and Encyclopedia Americana.

Notably appellant did not in his motion to vacate judgment make the point of improper reliance on extra-evidentiary material which he now urges on appeal.

The basis for objection to a trial court's reliance on material which is not admitted in evidence is that the adversely affected party suffers prejudice from the denial of an opportunity to present rebuttal. Baenitz's reply brief after trial obviated this danger, because in that brief he directly challenged the interpretation of the disputed material as urged by appellee. He argued the point; he

1. 66 STAT. 798 (1952), 35 U.S.C. § 103.

2. Supra note 1.

3. We shall refer to the two appellants simply as "Baenitz".

4. See, e. g., Brown v. Piper, 91 U.S. 37, 42, 23 L.Ed. 200 (1875); Friend v. Burnham & Morrill Co., 55 F.2d 150, 151 (1st Cir. 1932). See also Dwinell-Wright Co. v. National Fruit Product Co., 140 F.2d 618, 624 (1st Cir. 1944); MCCORMICK, EVIDENCE § 325 (1954).

did not seek opportunity to present rebuttal. He was not surprised by the court's consideration.

The District Court, after trial and briefs, rendered an opinion, incorporating its findings and conclusions. Having pointed out the reliance of the Patent Office on three prior patents and three publications, the court recited the plaintiffs' contentions and the Patent Office response. The court then concluded:

"After examining the evidence as a whole, the Court is inclined to agree with the defendant's interpretation of the references. The testimony demonstrated that the amount of glycerine used in the plaintiffs' process ranges from 131 to 168 grams per 1000 grams of stearic acid, and that this clearly overlaps the Christensen range of 160 to 168 parts. Further, it was shown that the hydroxyl numbers of esters obtained from use of 160 to 168 parts of glycerine would be in the range from 90 to 100. It was also pointed out that the temperature at which the Christensen process is conducted is the same as that for the plaintiffs' process. From this, it appears that the processes of Christensen and the plaintiffs are essentially the same. Accordingly, it seems reasonable to suppose they would inherently produce the same result. At least, the Court cannot say such a view is unwarranted where plaintiffs have offered no convincing proof to the contrary."

Baenitz moved to vacate the judgment "since the principal underlying reason appears to be based on a glaring error." The glaring error was that as demonstrated at trial the range of parts of glycerine used by Baenitz did not overlap the range of Christensen and thus the court erred in saying the processes were essentially the same. Baenitz said that the Commissioner acknowledged the absence of overlap when he urged that Christensen must be presumed to have used 80 per cent crude glycerine. He said it would be strange indeed to assume that Baenitz used 100 per cent and Christensen only 80 per cent pure glycerine. He said that the *Condensed Chemical Dictionary*, the pertinent pages of which were attached to his brief, clearly dispelled any notion that anything but pure glycerine would be normally used by either party.

The court, in an order, recited that it had found a technical error in its opinion, which it said was insufficient to alter the finding, and it amended by striking "168 parts" from the above-quoted passage and substituting "320 grams per 1000 grams, assuming that 80% crude glycerine was used in the reaction." The court denied the motion.

■ The Commissioner says that two sections of the Christensen patent, plus certain oral testimony, clearly indicate that Christensen contemplated the use of 80 per cent crude glycerine. Thus the nub of the dispute is a technical matter of chemical science, as to which the courts must rely upon the experts in the field. When the Patent Office and the District Court, aided by expert testimony, agree on such a matter, this court will not disturb the finding in the absence of clear error.[5]

■■ Appellants dispute the finding of identity between the Baenitz process and that of the prior patent. They place great emphasis on the trial court's mention of an "overlap" in the hydroxyl ranges of the two methods. It is quite true that no "overlap" would exist unless Christensen did use 80 per cent glycerine and Baenitz used 100 per cent—that is, unless the assumption mentioned above

---

5. Rule 52(a) of the Federal Rules of Civil Procedure governs our review of the District Court's opinion. Goodyear Tire and Rubber Co. v. Ladd, 121 U.S.App.D.C. 275, 349 F.2d 710, 711 (1965); Schafer v. Watson, 109 U.S. App.D.C. 360, 361, 288 F.2d 144, 145 (D.C.Cir.1961); Zenith Radio Corporation v. Ladd, 114 U.S.App.D.C. 54, 57, 310 F.2d 859, 862 (1962); Esso Standard Oil Company v. Sun Oil Company, 97 U.S.App.D.C. 154, 157, 229 F.2d 37, 40, cert. denied, 351 U.S. 973, 76 S.Ct. 1027, 100 L.Ed. 1491 (1956).

is accepted. However "overlap" is not essential to obviousness. All of the ingredients of the Baenitz process had been used together in the prior patent. The method of the two processes is identical —the esterification of glycerine with stearic acid in the presence of a catalyst. The mere quantity variation in the use of the ingredients, which may have avoided any "overlap" in the hydroxyl ranges of the two methods, does not disprove identity. Here again the problem is one of technical chemistry. The Patent Office found that the prior patentee, using his own process and ingredients, would inherently reach appellants' results. The District Court, after trial, accepted this determination, and we find no valid grounds for reversal, since the finding is consistent with the evidence.

■■■■■ Appellants argue that the court erred in its reference to "clear error". Whether a finding of obviousness under Section 103, Title 35, United States Code, is a finding of fact or a conclusion of law has been termed a much-mooted question. The cases for each proposition are legion. A recent decision of this court takes the position that "such a finding is not strictly one of fact or of law." [6] The practicality involved is the weight to be accorded a Patent Office decision of "obviousness". The finding of obviousness basically results from the application of subjective opinion to the bare facts of a particular case. Although it may not conform to the general character of factual determinations as we normally conceive them, it definitely is factual in nature. It is an ultimate fact derived from basic facts. The finding of non-patentability, of course, is, on the other hand, a conclusive legal determination. It derives from an application of the pertinent statutory standards to the facts as found. Since most often the decision of non-patentability follows as a matter of course from the finding that an alleged invention was "obvious", these separate and distinct elements have come to be mentioned interchangeably in judicial opinions, and this unhappy practice tends to a measure of confusion.

The Constitution [7] provides Congress with the *power* to grant exclusive rights to certain discoveries for the express purpose of promoting the progress of science. It nowhere conveys any private right to a patent; "obviousness" is not mentioned. The statute (Title 35, United States Code) created the particular standard of patentability under dispute here. Section 103 of that Title provides that "A patent may not be obtained" if as a matter of fact the expert agency finds "that the subject matter as a whole would have been obvious at the time the invention was made". So our District Court really made two separate determinations, different in nature. It found obviousness. The elements of that determination are a matter of fact, of expertise, not of law. The clearly erroneous rule applies. Having made the finding of obviousness, the court proceeded, consistently therewith, to affirm the determination of non-patentability. This was a conclusion of law. The court did not apply the clearly erroneous rule to this conclusion. It could hardly be said with reason that a court must not disturb the finding of identity between the Christensen process and Baenitz's process in the absence of clear error, and then say that the court may reject the natural culmination of that finding, even in the absence of clear error, simply because the word "obviousness" is mentioned in a statute.

Affirmed.

6. Stieg v. Commissioner of Patents, Nov. 18, 1965. And see Standard Oil Development Co. v. Marzall, 86 U.S.App.D.C. 210, 214, 181 F.2d 280, 284 (1950); *cf.* L-O-F Glass Fibers Company v.

Watson, 97 U.S.App.D.C. 69, 74, 75, 228 F.2d 40, 45, 46 (Cir. 1955).

7. Art. I, § 8.