54 CCPA
**Application of Richard E. WARNER and Virginia Ann Warner.**
**Patent Appeal No. 7822.**

United States Court of Customs and Patent Appeals.
June 29, 1967.

Richard E. Warner, for appellants.

Joseph Schimmel, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH, and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

This is an appeal from the decision of the Board of Appeals affirming the examiner's rejection of the appealed claims [1] under 35 U.S.C. § 103. Since we find a substantial factual basis for the board's legal conclusion of obviousness, its decision is affirmed.

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. In application Serial No. 123,537, filed July 12, 1961, entitled "Graduated Density Cosmetic Sticks."

In its broadest aspect, appellants' invention is a cosmetic stick applicator consisting of multiple colored materials having a graduated increase in density toward the center.[2] The invention is claimed as a "Lipliner-Lipstick," "stick type lipstick," "stick type application for chapped lips," "stick type deodorant," "Eye Shadow-Eye Liner," and a "stick type eye shadow." Two features of the invention are stressed: first, contrasting colors can be combined in one unit; and second, the graduated density permits the unit to always remain at a more desirable and usable point. Both features are readily understood from a consideration of the embodiment of appellants' invention termed a "Lipliner-Lipstick," described in the examiner's answer as follows:

> One embodiment of the invention is described as a "Lipliner-Lipstick" in which conventional lipstick material is molded or formed about a core of lipliner material which is harder than the lipstick material and may be of a different or darker shade than the lipstick material. In use, the hard lipliner or core is applied to the outline of the lips and then the softer lipstick material is applied to lips within the area defined by the lipliner. In addition to functioning as a means to outline the lips, the core also serves to maintain the pointed tip of the cosmetic stick.

The following references were relied on:

Knight          588,867 Aug. 24, 1897
Rubenstein   2,409,000 Oct. 8, 1946
Zetti (Italian) 521,507 Mar. 29, 1955

Zetti discloses a lipstick consisting "of plural parts or segments of different qualities and/or type of color." The lipstick "is characterized in that its plural parts are arranged lengthwise one beside the other * * * and in such a manner as to form a single stick or

pencil." According to Zetti, his invention obviates the necessity of a lady of refinement carrying numerous lipsticks and, further, allows her to "use two or more lipsticks with superposing effect" absent "complex manipulations that are non-aesthetic and cumbersome."

Rubenstein discloses a crayon "of a type commonly used for marking packages for shipment." The crayon consists of two marking materials, a dense core surrounded by a softer material. The core serves to prevent bending or "distortion and will also result in an even wearing of the crayon at the pointed end thereof, so that the tapering at the writing end of the crayon will always be maintained."

Knight discloses a crayon or pencil consisting of a core of graphite or similar preparation and two or more concentric layers of progressively softer graphite. The crayon or pencil is termed "point-maintaining or self-sharpening."

As stated in the board's opinion:

> Claims 1, 3 and 6 were * * * rejected as being unpatentable over Zetti in view of Knight or Rubenstein. Claims 2, 4, 5 and 7 were rejected as being unpatentable over conventional cosmetic sticks in view of Knight.
>
> * * * * * *
>
> The advantages of forming a marking device such as a pencil or crayon with a core of greater density than the surrounding layer or layers is old in Knight and Rubenstein. It is our opinion that it would be obvious to carry forward this concept in the formation of other marking devices such [as] a lipstick or in the formation of other conventional cosmetic sticks.
>
> Whatever advantage there may be in providing a lipstick with a plurality of axially extending portions of different color, such advantages are inherent in the lipstick disclosed in the Zetti patent. The arrangement of

---

**2.** Appellants' specification states that the softer material may be deposited in such a manner relative to the denser material as to "establish a concentric center or laminated center unit." The examiner rejected claims 1, 3 and 6, having the term "laminated," as "indefinite." We find that the issue presented under section 103 is dispositive of all claims.

such colors in concentric form as in Rubenstein or Knight would be but an obvious variation unproductive of any patentably new results.

\*　　\*　　\*　　\*　　\*　　\*

We agree with the Examiner that in view of the state of the prior art, whatever differences are claimed between the subject matter sought to be patented and the prior art such differences are of such a nature that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art. \*　\*　\*

Appellants appear here pro se. There is nothing of record to indicate that they have been at any time represented by an attorney in the prosecution of their application. We mention this fact because appellants' arguments are quite extensive and we have considered them carefully to the end of according appellants every consideration to which they are entitled under the law. Discounting form and the absence of precise legal terminology and reasoning, appellants' appeal is predicated essentially on three reasons: first, the references relied on are drawn from nonanalogous art; second, the Patent Office relied on "hindsight"; and third, doubt should be resolved in an inventor's favor.

As to the first reason, appellants agree that both Knight and Rubenstein disclose the feature of graduated density in a writing instrument to maintain the writing point. But it is argued, they were the *first* to discover "an efficient method of designing and combining a Lipstick and Lipliner into one basic configuration" and before their invention such a configuration "had not been conceived, contrived or discovered."

On the record, appellants appear to be the first to have combined the elements of the prior art into their particular combination. However, section 103 prohibits the grant of a patent unless such combination would not have been obvious at the time it was made to one of ordinary skill in the art to which the claimed subject matter pertains. All inventors, regardless of their personal skills, are held to this statutory standard.

Resolution of appellants' first reason depends on whether those of ordinary skill in the cosmetic pencil art would be aware of or reasonably turn to the writing art. We agree with the solicitor's conclusion that they would.[3] Appellants' problem was that of maintaining a point on a cosmetic applicator. This is not a case where others had failed in the search for such a device and appellants had discovered both the problem and its solution. See, e. g., In re Conover, 304 F.2d 680, 49 CCPA 1205. We think those of ordinary skill in the cosmetic pencil art, faced with the problem of maintaining a point on such a pencil, would be aware of or reasonably turn to the crayon art for the solution to this problem. In short, we do not find that the nonanalogous art doctrine excludes the teachings of Rubenstein and Knight from consideration under section 103.

Second, appellants argue that hindsight reasoning has been employed in rejecting their claims and that such reasoning is forbidden as a test of obviousness under section 103. We do not agree that hindsight evaluation of the prior art is required to sustain the conclusion that appellants' invention is obvious within the stated conditions of section 103. This conclusion follows from application

3. The solicitor argues in his brief as follows:

It is evident from Knight's disclosure that his graduated density concept is not limited to writing applicators, such being applicable to "any dry solid used for marking purposes which is obtainable of several grades of hardness." Then too, a definite analogy exists between stick type cosmetic applicators and crayons intended for writing or drawing use. Parents of small children are occasionally confronted by stark evidence of that fact. Also, desperate heroines sometimes resort to writing lipstick messages on mirrors, or so dramatists could have us believe. Obviousness transcends conventional use, here at any rate.

of the test enunciated in Graham v. John Deere Co., 383 U.S. at 17–18, 86 S.Ct. at 694:

* * * Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

* * *

■ We think the Patent Office has presented a factual basis which supports the board's legal conclusion that appellants' invention would be obvious to one of ordinary skill in the art. Multiple color lipsticks were shown to be old in the art. The efficiency of their use as well as the feature of blending colors on the lips was also shown to be old. And lipliners are admittedly old. We agree with the Patent Office position that the claimed combination of a lipliner and a lipstick was graduated density is obvious and hence that it is not a patentable invention, section 103.

While appellants have urged the alleged commercial success of lipliner-lipsticks, the Supreme Court in *Graham* characterized such evidence as a "secondary consideration" which should be considered in resolving the issue under section 103. Considering *all* the facts of record [4] we find a substantial factual basis for the board's decision on obviousness.

Finally, appellants argue that doubt should be resolved in their favor. According to appellants:

* * * The Court's decision in In re Sporck (1962), 49 C.C.P.A. 1039, 301 F.2d 686, 133 U.S.P.Q. 360, is particularly in point:

"Obviousness is a legal conclusion which we are required to draw from facts appearing in the record or of which judicial notice may be taken.

Thus before we can conclude that any disclosed invention is 'obvious' under the conditions specified in 35 U.S.C. 103, we must evaluate facts from which to determine (1) what was shown in the prior art at the time the invention was made, and (2) the knowledge which a person of ordinary skill in the art possessed at the time the invention was made.

"Here, neither the record nor the facts of which we are able to take judicial notice supplies the factual data necessary to support the legal conclusion of obviousness of the invention at the time it was made. We are unwilling to substitute speculation and hindsight appraisal of the prior art for such factual data. For this reason we think there is a doubt as to the factual basis supporting the conclusion of the board of appeals that the invention would have been obvious to one of ordinary skill in the art of metal spinning. Under these circumstances, the doubt should be resolved in favor of the applicant. In re Devine, 46 CCPA 725, 261 F.2d 241, 120 USPQ 84; In re Altmann and Bureau, 46 CCPA 818, 264 F.2d 894, 121 USPQ 262."

Appellants also cite:

In re Soli (1963), 50 C.C.P.A. 1288 [317 F.2d 941], 137 U.S.P.Q. 797, 801;

In re Nurkiewicz (1964), 52 C.C.P.A. [848], 338 F.2d 1020, [143 U.S.P.Q. 421].

The solicitor argues:

Appellants ask that doubt be resolved in their favor * * *. It is submitted that there is no reasonable basis for doubt that the subject matter of the appealed claims would have been obvious to one ordinarily skilled in the art, in view of prior art. Moreover, there may no longer be any war-

---

4. We need not consider whether appellants have demonstrated that this alleged com-

mercial success stems from their invention and not from other causes.

rant for resolving doubt in an applicant's favor. See Graham v. John Deere Co., 383 U.S. 1, 18 [86 S.Ct. 684, 15 L.Ed.2d 545,] 148 USPQ 459, 467.

■■ The patentability of an invention is not to be viewed with hindsight or "viewed after the event," Goodyear Co. v. Ray-O-Vac Co., 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721 (1944) and authorities cited therein, fn. 4. See also In re Sporck, supra, citing and relying on *Goodyear*. Or as stated by Mr. Justice Clark in United States v. Adams, 383 U.S. 39, 50, 86 S.Ct. 708, 713, 15 L.Ed.2d 572 (1966), whether the individual elements of a combination are old "begs the question," as "If such a combination is novel, the issue is whether bringing them together as taught by Adams was obvious in the light of the prior art." Thus, where the invention sought to be patented resides in a combination of old elements, the proper inquiry is whether *bringing them together was obvious* and not, whether one of ordinary skill, having the invention before him, would find it obvious through hindsight to construct the invention from elements of the prior art.

We considered the doctrine forbidding hindsight reconstruction in In re Van Wanderham, 378 F.2d 981, 54 CCPA ——. Therein we noted that the Supreme Court recently cautioned against "slipping into hindsight," Graham v. John Deere Co., 383 U.S. 1, 36, 86 S.Ct. 684, 15 L.Ed.2d 545, citing Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co., 6 Cir., 332 F.2d 406, 412 (1964), cert. denied 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93, which in turn cites *Sporck*, supra. Contrary to appellants' urgings, *Sporck* is not a "rule of doubt"

case nor are the other authorities cited by appellants. See In re Nurkiewicz, supra (the Patent Office "has not cited anything to dispute [applicant's] * * * theory" and "*no prior art* * * * discloses" the features of applicant's invention) and In re Soli, supra ("This is not a case where the examiner's allegation appears to be based on mere conjecture" and "the office position * * * seems to us to be founded both on logic and sound scientific principle"). See also In re Dinwiddie, 347 F.2d 1016, 52 CCPA 1693 (the evidence included appellant's "concrete explanation" versus the board's "unsupported speculation"); In re Sheppard, 339 F.2d 238, 52 CCPA 859 (the evidence included a factual assertion in a reference versus board's "speculation").[5]

■■ The "doubt" in the above cases arose from and related to the absence of facts necessary to support the Patent Office's legal conclusion of obviousness under section 103.[6] We think the precise language of 35 U.S.C. § 102 that "[a] person shall be entitled to a patent unless," concerning novelty and unobviousness, clearly places a burden of proof on the Patent Office which requires it to produce the factual basis for its rejection of an application under sections 102 and 103, see Graham and Adams. Where such proof is lacking we see no necessity for resolving doubt in favor of the Patent Office's position, for example, where, as in the above cases, the factual basis to support the legal conclusion of obviousness under section 103 is missing, and the record there supported the applicant's position that the invention was reconstructed through hindsight. Nowhere in these cases was

---

5. Accord, In re Hofstetter, 53 CCPA 1545, 362 F.2d 293. While this latter decision is a "hindsight reconstruction" and not "solely" a "rule of doubt" case, the opinion discusses the "rule of doubt" and, as certiorari has been granted by the Supreme Court, Brenner v. Hofstetter, 386 U.S. 990, 87 S.Ct. 1304, 18 L.Ed.2d 333, no additional comment will be made.

6. Unlike the Court of Appeals, District of Columbia, we do not have the benefit of

findings of fact and conclusions of law. Moreover, we believe *obviousness* is a legal conclusion based on factual evidence, Graham v. John Deere Co., supra, and not a factual determination as held in Baenitz v. Ladd, 363 F.2d 969 (D.C.Cir.1966). Compare Swofford v. B & W, Inc., 251 F. Supp. 811 (S.D.Tex.1966). See also Railex Corp. v. Joseph Guss & Sons, 256 F.Supp. 994 at fn. 1 (D.D.C.1966).

there the necessary factual basis to support the conclusion that it would have been obvious to one of ordinary skill *to bring the elements together*. United States v. Adams, supra.

The Supreme Court in *Graham* and *Adams*, supra, foreclosed the use of substitutes for facts in determining obviousness under section 103. The legal conclusion of obviousness *must be supported by facts*.[7] Where the legal conclusion is not supported by facts it cannot stand. And, as admonished in *Graham*, 383 U.S. at 18, 86 S.Ct. at 694, "the primary responsibility for sifting out unpatentable material lies in the Patent Office."

A rejection based on section 103 clearly must rest on a factual basis, and these facts must be interpreted without hindsight reconstruction of the invention from the prior art. In making this evaluation, all facts must be considered. The Patent Office has the initial duty of supplying the factual basis for its rejection. It may not, because *it* may

doubt that the invention is patentable, resort to speculation, unfounded assumptions or hindsight reconstruction to supply deficiencies in its factual basis. To the extent the Patent Office rulings *are* so supported, there is no basis for resolving doubts against their correctness. Likewise, we may not resolve doubts in favor of the Patent Office determination when there are deficiencies in the record as to the necessary factual bases supporting its legal conclusion of obviousness.

Here, the Patent Office has supplied a proper factual basis to support the legal conclusion of obviousness.[8] We do not find any support for appellants' position that hindsight reconstruction of the prior art is required to provide that factual basis. Nor is the "rule of doubt" applicable.

The decision of the board is therefore *affirmed.*

*Affirmed.*

WORLEY, C. J., and KIRKPATRICK, J., concur in the result.

---

**7.** Additionally, *Graham* and *Adams* clearly point out that just as certain facts support the conclusion of obviousness, other facts may support nonobviousness. Thus Adams presented factual data and the Supreme Court commented, 383 U.S. at 51–52, 86 S.Ct. at 714:

> We conclude the Adams battery was also nonobvious. As we have seen, the *operating characteristics* of the Adams battery have been *shown* to have been *unexpected and to have far surpassed then-existing wet batteries.* Despite the *fact* that each of the elements of the Adams battery was well known in the prior art, to combine them as did Adams required that a person reasonably skilled in the prior art must ignore that (1) batteries which continued to operate on an open circuit and which heated in normal use were not practical; and (2) water-activated batteries were successful only when combined with electrolytes detrimental to the use of magnesium. These long-accepted *factors*, when taken together, would, we believe, deter any investigation into such a combination as is used by Adams. * * * [Emphasis added.]

Thus the legal conclusion of obviousness must rest on a consideration of *all* the

facts, including the "secondary considerations" referred to in *Graham*. Statements of the Commissioner appear to be contrary.

> * * * if the examiner is satisfied that the claimed invention is clearly obvious in view of the teachings of the prior art, to a person having ordinary skill in the pertinent art, then a patent should not be granted even if affidavits, terminal disclaimers, and the like are presented by the applicant, *since such papers cannot change what is obvious so it may become unobvious and therefore a patentable invention.* [Emphasis added.] 825 O.G. at 827.

Manifestly both sides at least have the right to be heard on the issue of obviousness. *Adams*, supra. Also, the Patent Office does not explain under what theory "secondary considerations," facts which often arise after a patent has issued, are "contrary to section 103."

**8.** See Administrative Law and Procedure, Judicial Review, 54 Geo.L.J. 289, 314, 326–41; Administrative Law and Procedure, Review of Questions of Fact, 55 Geo.L.J. 69, 103–07. See also *Railex Corp.*, supra fn. 6.