**Application of Leonard M. RICE.**
**Patent Appeal No. 8961.**

United States Court of Customs
and Patent Appeals.
July 19, 1973.

Donald R. Dunner, Lane, Aitken, Dunner & Ziems, Washington, D. C., attorneys of record, for appellant. Thomas R. Boland, Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Robert D. Edmonds, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

RICH, Judge.

This appeal is from the Patent Office Board of Appeals decision affirming the examiner's rejection of claims 1–4 of application serial No. 678,502, filed October 27, 1967, for a hangover remedy,

which was based on obviousness under 35 U.S.C. § 103 in view of the prior art.

Claim 1 is the only independent claim and reads:

1. A therapeutic composition of matter containing the following ingredients present in the recited approximate parts by weight:

| Ingredient | Parts by Weight ± 10% By Weight |
|---|---|
| Aspirin | 414 |
| Aluminum Hydroxide | 130 |
| Acetaminophen | 325 |
| Magnesium Carbonate | 65 |
| Magnesium Trisilicate | 65 |
| Nicotinamide | 12.5 |
| Thiamine Hydrochloride | 5 |
| Peppermint Oil | 55 |
| Caffeine | 195 |

said composition being *divided into two separate portions*, the *first portion* containing the recited amounts of aspirin and aluminum hydroxide, the *second portion* containing the recited amounts of acetaminophen, magnesium carbonate, magnesium trisilicate, nicotinamide, thiamine hydrochloride and peppermint oil, *the caffeine* being present in said first and/or second portions. [Emphasis ours.]

Claim 2 reduces the permissible parts-by-weight deviation from ± 10% to ± 5%; claim 3 divides the caffeine between the first and second portions in a certain way; and claim 4 states that the aluminum hydroxide is a gel.[1] Appellant agrees the claims stand or fall together.

The unobviousness of the claimed invention is argued by appellant on a very narrow ground having nothing to do with the obviousness of using the particular ingredients, as is evident from the opening admission in appellant's brief that

Each of the ingredients utilized in the claimed composition is known to be effective for the specific purpose intended by appellant and several have been generally used in treating some

of the symptoms of overindulgence [in alcohol].

As a matter of interest and to aid in understanding why appellant combines these particular ingredients in his remedy, his specification points out that there are, in terms of function, six essential ingredients: an analgesic, an antidepressant, a mild stomachic, a mild anesthetic, a general metabolic systemic, and an antacid. It is concededly prior-art knowledge that these properties are known to be possessed by the ingredients listed. In the formulation of claim 1, there are two analgesics, three antacids, and two metabolic systemics. The peppermint oil is classified as both mild anesthetic and stomachic.

The arguments for patentability have to do only with the stability, shelf-life, and commercial practicability of the composition. Having decided to compound a remedy with the above ingredients, it appears to have been discovered that they could not all be mixed together and marketed in that form because some of the ingredients decompose, offensive odor develops, and caking takes place, interfering with the filling of capsules.

It is said that the invention resides in combining the ingredients in a particular way with the claimed specific segregation so as to achieve compatibility of ingredients. The cats must be separated from the dogs. The invention, as claimed, is said to avoid the above-mentioned problems and to be unobvious. It will be seen from claim 1 that the total composition is divided into two parts. The aspirin and aluminum hydroxide constitute the first part; the remaining ingredients, except for the caffeine, make up the second part; and the caffeine may be solely in either part or divided between them. As disclosed, the first and second parts are placed in separate capsules for administration and a single dose would consist of two capsules, one of each kind, but encapsulation is not a claim limitation.

---

1. The record shows this to be a dried gel but neither the specification nor claims so specify. The argument is that those skilled in the art would know it is dried.

The sole question for us is the obviousness of making the separation of these particular ingredients into two portions in the particular manner claimed. Appellant submits that the references of record are silent both as to the presence of and a solution for the incompatibility problems. An affidavit of the appellant, who qualifies himself as a Doctor of Philosophy, from Georgetown University, registered pharmacist, and Professor of Pharmaceutical Chemistry at Howard University, with extensive work experience and some fifty technical publications to his credit, has been submitted to support the factual allegations of incompatibility when the segregation of the ingredients is not as claimed and the stability and satisfactory shelf-life of the composition, over a period of four months, when it is.

As we pointed out in In re Warner, 379 F.2d 1011, 54 CCPA 1628 (1967),

A rejection based on section 103 clearly must rest on a factual basis, and these facts must be interpreted without hindsight reconstruction of the invention from the prior art. In making this evaluation, all facts must be considered. The Patent Office has the initial duty of supplying the factual basis for its rejection. It may not, because *it may doubt* that the invention is patentable, resort to speculation, unfounded assumptions or hindsight reconstruction to supply deficiencies in its factual basis.

The examiner and the board cited eleven prior art references but they were relied on primarily to show the medicinal uses of the individual ingredients, which appellant concedes were known. In its decision affirming the § 103 rejection, the board relied on only three of the references and seemingly added, by taking judicial notice of it, the division of ingredients "in the common Seidlitz powder." [2] The board did not label this either as a new reference or a new rejection, the solicitor has not mentioned it, and we will therefore regard it as an abandoned argument. The only cited references relied on by the board are the following:

American Drug Index, 1965 Ed., pp. 24–29

Facts and Comparisons, Apr. 1965, pp. 244–249

U. S. Dispensatory, 25th Ed., Lippencott, 1955, pp. 15–17; 773–774; 890–895; 1015–1016; 1416 and 1524.

Of these, the solicitor relies only on the first two and adds reference to

Sollman, A Manual of Pharmacology, 5th Ed., 1957, pp. 38–39.

The solicitor thus abandons any reliance on the U. S. Dispensatory. Considering what the board relied on it for, this is not surprising. All the board said was

Note, the U. S. Dispensatory teaches aspirin in combination with other ingredients included in appellant's second combination. No problems appear to be reported.

The board did not point to any compositions of aspirin with other ingredients in the cited pages of the U. S. Dispensatory, nor did the examiner. If there is such a disclosure, we do not know which "other ingredients" or how many were combined with aspirin and the absence of reference to any problem merely substantiates appellant's point that, at least as to this reference, neither the problem nor its solution is suggested.

2. The board opinion leaves it to us to find out what a Seidlitz powder consists of and how the ingredients are segregated. We find the information in Webster's New International Dictionary, 2d ed. 1934, as follows:

*Seidlitz powders.* Effervescing salts consisting of two separate powders, one of 40 grains of sodium bicarbonate mixed with 2 drams of Rochelle salt and the other of 35 grains of tartaric acid. The powders are mixed in water, and drunk while effervescing, as a mild cathartic; —so called from the natural water of Seidlitz. Called also Rochelle powders. Elementary chemical knowledge indicates the two parts contain a base and an acid, respectively, that in the presence of moisture they react, to produce effervescence, and there would be an obvious reason for segregation.

The solicitor bases his brief argument only on three other references. He cites the *American Drug Index*, together with *Facts and Comparisons* as teaching the use of aluminum hydroxide, aspirin, and caffeine together. This is, of course, appellant's "first portion," in those embodiments in which he puts caffeine in the first portion. *Sollman* is cited only as showing "that combinations of medicines are conventionally administered." It is then argued

> Nothing could be more obvious than to combine the remaining six ingredients in a second dosage portion. First, it would be readily apparent to one skilled in the art that the nine ingredients amount in the aggregate to more than can be administered as a single dose. Second, the noted prior art clearly demonstrates that aluminum hydroxide, aspirin and caffeine are compatible. Finally, there is nothing in the prior art to suggest that the remaining six ingredients are not compatible with each other.

We find this argument unpersuasive of obviousness. Starting from the prior art showings relied on by the Patent Office that combinations of medicines are conventional and the disclosures they have produced of specific combinations of three or four ingredients including aspirin, we think nothing could be more obvious than attempting to combine *all* of appellant's ingredients. Apparently it was this attempt that brought the problem of incompatibility to light. As for all of the ingredients being too much for a single dose, there is no support for this contention. The application is silent on dose. The formula is not in terms of quantity but in terms of *parts* by weight. Furthermore, what is more common in those cases where a dose is too big to be swallowed in a single tablet or capsule than to take two or more at a time? That fact does not suggest putting *different* ingredients in separate tablets or capsules to be taken together.

The last two sentences quoted above are, in our opinion, clearly hindsight reasoning. It does not show obviousness to point out that nothing in the prior art contradicts what appellant has found. It shows, on the contrary, that those findings are valid. Of course the "remaining six ingredients" (or seven) are compatible with each other. That is what appellant found. It is their incompatibility with the first portion which underlies this invention. The prior art wholly fails to suggest even trying to put all of appellant's ingredients together and, given a reason to do that, it fails to show either any problem in doing so or any solution to that problem. Our study of the references confirms appellant's assertion that, as to his combination of ingredients, they contain no suggestion of a compatibility problem. The solicitor appears to suggest there really is no such problem but we think the affidavit evidence sufficiently shows that there is. Circumstances strongly confirm its existence. Why else would this application have been filed, describing and claiming from the beginning the specific two-part formulation?

The question of patentability turns, in final analysis, on the board's contention, repeated by the solicitor, that "*if* a compatibility problem were to be noticed in combining the claimed ingredients, it would be obvious to solve that problem in the manner indicated by appellant." The trouble with that argument is that it is mere assertion and that there is nothing whatever in the references to support it. In putting it forward, the board said, referring to appellant's ingredients, "It should be noted that an infinite number of combinations is possible." Accepting that as an approximation to the truth, we fail to see the obviousness in devising appellant's particular two-part segregation of ingredients as claimed.

The decision of the board is reversed.

Reversed.