**RAILEX CORPORATION, Plaintiff,**

**v.**

**JOSEPH GUSS & SONS, INC., and G. A. Braun, Inc., Defendants.**

**Civ. A. No. 2062–64.**

United States District Court
District of Columbia.

July 28, 1966.

---

Donald L. Dennison, Dennison & Dennison, Washington, D. C., John M. Calimafde, Hopgood & Calimafde, Stanley I. Rosen, New York City, for plaintiff.

Dos T. Hatfield, Washington, D. C., Thomas Cifelli, Jr., Richards & Cifelli, Newark, N. J., for defendants.

## OPINION

JACKSON, District Judge.

This is a civil action under 35 U.S.C. § 281 for alleged infringement of plaintiff's U. S. Patent No. 3,010, 584, issued November 28, 1961, and entitled "Article Storing and Delivering Apparatus with Inclined Article-Supporting Rack." This Court previously denied plaintiff's motion under Rule 39(b), F.R.Civ.P., for trial by jury and also denied defendants' motion for summary judgment for plaintiff's alleged failure to join an indispensable party. Railex Corp. v. Joseph Guss and Sons, Inc., 40 F.R.D. 119 (D.D.C. 1966). After one full day of trial and the completion of testimony of plaintiff's first two witnesses, the Court held as a matter of law that the patent in suit was invalid in view of the stipulated prior public use of an angle bar (plate) device pictured and described in defendants' Exhibit 1.

In this regard the Court is now fully cognizant of the rule of law in this jurisdiction that doubts as to patentability must be resolved in favor of the presumption of administrative correctness which is accorded to the Patent Of-

fice decision to grant or deny the patent or application in suit. See Reynolds v. Aghnides, 356 F.2d 367 (D.C.Cir. 1966). Cf. In re Hofstetter, 362 F.2d 293 (CCPA 1966).[1] In the present case, however, the Court is thoroughly convinced[2] that the broader claims 1 to 4 are fully anticipated under 35 U.S.C. § 102(b) by the prior public use device and that the narrower claims 5 to 8, which in any event would not be infringed by defendants' accused stud and roller device, are invalid for obviousness under 35 U.S.C. § 103.

Pursuant to Rule 52(a), F.R.Civ.P., the following Findings of Fact and Conclusions of Law are hereby made:

## FINDINGS OF FACT

1. This is an action for infringement of U. S. Patents Nos. 3,010,584; 3,118,-531 and 3,152,682, all of which are presently owned by plaintiff, as assignee.

2. Plaintiff is a corporation organized and existing under the laws of the State of New York and has its principal place of business at 89–02 Atlantic Avenue, City and State of New York. Plaintiff is engaged in the business of manufacturing and selling clothes conveyors of the type commonly used in dry cleaning and laundry establishments in the United States.

3. Defendant, Joseph Guss & Sons, Inc., is a corporation organized and existing under the laws of the State of Maryland, and has a regular and established place of business at 2046 West Virginia Avenue, N. E., within the District of Columbia.

4. Defendant, G. A. Braun, Inc., is a corporation organized and existing under the laws of the State of New York and has a regular and established place of business at 2221 Adams Pl., N. E., within the District of Columbia.

5. White Machine Co., a corporation organized and existing under the laws of the State of New Jersey and having its principal place of business located at 50 Boright Avenue, Kenilworth, New Jersey is openly and avowedly defending this action.

6. The nominal defendants are distributors who sell the accused clothes conveyors manufactured by White Machine Co.

7. On April 20, 1966, this Court granted plaintiff's unopposed motion under Rule 42(b), F.R.Civ.P., for separate trials and ordered that (1) the issues of validity and infringement of U. S. Pat-

---

1. In each of the four patent cases cited as legal precedents by the Court of Appeals in Reynolds v. Aghnides, supra, the District Court had *agreed* with the Patent Office. Thus the Court of Appeals in the four cited patent cases was resolving its own doubts in favor of the combined presumption of administrative and judicial correctness normally accorded to concurrent decisions of the Patent Office and District Court. The Court of Customs and Patent Appeals, which like the District Court and unlike the Court of Appeals now makes the *first* judicial determination of patentability, has consistently from its inception resolved doubts in favor of applicants for patent, exactly as the Court of Appeals did at the time when it made the first judicial determination of patentability. See In re Hofstetter, supra.

2. It is the considered opinion of this Court that the "thorough conviction" standard of Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657 (1894), which is applied in deciding patent and trademark cases in this jurisdiction, should properly be held equivalent to the intermediate degree of proof required in civil actions, i. e., clear and convincing evidence. See Harpman v. Watson, 181 F.Supp. 919 (D.D.C.1959). In other words, "thorough conviction" should be regarded as more than a mere preponderance of the evidence but less than proof beyond a reasonable doubt, which interpretation would permit resolution of slight but reasonable doubts in favor of applicants for patent in civil actions under 35 U.S.C. § 145, and in favor of alleged infringers in patent infringement suits such as this one. Both patent applicants and alleged infringers are seeking to overturn decisions of the Patent Office tribunals, and neither class should normally be required to prove its case beyond a reasonable doubt in order to prevail. The Patent Office is simply not that infallible. See 20 Am.Jr., Evidence, § 1254 (1962).

ent No. 3,010,584 be tried separately on May 2, 1966 and (2) the issues of validity and infringement of U. S. Patents Nos. 3,118,531 and 3,152,682 be tried together, if necessary, at a later date, subsequent to decision of the issues involved in the trial of U. S. Patent No. 3,010,584. Pursuant to said order, a trial to the Court without a jury was held on May 2 and 3, 1966, with respect to the latter patent, which for purposes of this decision is the only patent involved and is hereinafter referred to as the patent in suit.

8. The patent in suit, No. 3,010,584, issued to plaintiff, as assignee, on November 28, 1961, on an application filed on June 23, 1960 by Abraham Rutkovsky and Sam Rutkovsky.

9. The patent in suit is directed to conveyors which conserve space by transporting clothing from one level to another, e. g., from floor to ceiling and return to the floor. The conveyors comprise three rail sections: a lower horizontal end portion 14, an upper horizontal end portion 16 and intermediate inclined portions 18 which join the upper and lower portions to form a continuous rail.

Suspended from the rail sections and mounted for movement along the continuous rail is a clothes-carrying rack 32. This rack has portions corresponding to the rail portions: lower horizontal end rack portion 34, upper horizontal end rack portion 36 and intermediate inclined rack portion 38. The rack portions comprise a plurality of rigid individual rack members 40 disposed in end-to-end relation and pivotally connected to each other at adjacent ends by universal joint connections 42, including pivot (hinge) pins 44, which connections permit adjacent rack members 40 to pivot both horizontally and vertically with respect to each other.

The rack portions (34, 36 and 38) are suspended from the rail portions (14, 16 and 18) by trolley yokes 58 mounted on the upper end of each pivot pin 44. Each yoke has a pair of arms 60, which straddle the rail 12 and on the top of which

trolley rollers 66 are positioned for riding on the rail.

The conveyor is operated by a motor driven sprocket wheel 68 located at the upper end. The sprocket wheel is provided with arms or spokes 82 having bifurcated fork-shaped) teeth 70 for engaging the pivot pins 44 and driving the article-carrying rack.

Verticle alignment of the rack members 40 and their associated trolley yokes and pivot pins is maintained by a series of rigid members 86 attached to the underside of the sprocket wheel and positioned to engage the lower ends 88 of the pivot pins 44. The rigid members apply a restraining radial force to counteract the tendency of the yoke and pivot pin assemblies to tilt about the sprocket wheel teeth, which tend to act as lever fulcrums.

10. Claim 8, which plaintiff, at the trial, represented as typical and on which plaintiff elected to stand or fall follows:

An article storing and delivery apparatus, comprising an endless stationary rail having intermediate inclined portions and upper and lower horizontal end portions, an endless article-supporting rack having corresponding intermediate inclined portions and corresponding upper and lower horizontal end portions, said rack having a plurality of horizontally spaced movable support members suspended from said rail and movable along the length thereof for supporting said rack for movement below said rail, each of said support members having a pair of laterally spaced wheels in rolling engagement with the upper surface of said rail and a pair of laterally spaced arms straddling the sides of said rail, said inclined portion of said rack and the articles carried thereon being operable, to cause a pulling force to be exerted on said support members at said upper portion of said rack causing said arms of said support members to be normally biased into an inclined position extending in a direction toward said inclined portions of said rack so that

one of said arms of each of said support members at said upper portion of said rack contacts a side of said rail causing interference with the movement of said support members and said rack, each of said members having a pivot pin extending below said arms and below said rack, said pivot pins being also biased into the same position as said arms, a sprocket wheel positioned at said upper end of said rack and engageable with said pivot pins of said support members at said upper end for moving said members along said rail and thereby moving said rack along said rail, and a series of rigid members connected to said sprocket wheel and extending downwardly therefrom, each of said rigid members having one of its ends in position for engaging the lower end of one of said pivot pins as the latter moves into position at said upper portion of said rack for counteracting said pulling force and maintaining said pins and arms in a vertical position.

Broader Claim 1 is also reproduced here:

In an article storing and delivery apparatus, an endless rail having upper and lower portions and inclined portions therebetween, an endless article-supporting rack mounted for movement on said rail and having corresponding upper and lower portions and inclined portions positioned at said inclined portions of said rail, whereby said inclined portions of said rack and the articles carried thereon are operable to normally cause a pulling force to be exerted on said rack to bias said upper portion thereof into a position which is tilted toward said inclined portions of said rack, and means mounted adjacent said upper portion of said rack and engageable therewith for counteracting said pulling force and thereby prevent the tilting of said upper portion.

11. On the basis of all the evidence before it, including testimony of two of plaintiff's own witnesses and arguments of counsel, the Court finds that the sole asserted novel structural feature in the patented conveyor was the rigid members 86 (or angle bars) which were added to the underside of the sprocket wheel 68 and that the purpose of such members was to maintain the pivot pins, trolley yokes and rack members in vertical alignment by applying a restraining radial force to counteract the tendency of the pins to tilt inwardly about the sprocket teeth, which tend to act as lever fulcrums under the influence of heavy clothing loads.

12. It is admitted by plaintiff that, as early as 1958, the White Machine Co. sold in this country two-level conveyors having sprocket wheels equipped with angle bars (or angle plates) which were secured to the underside of the driving sprocket wheel and which engaged the upper portions of clothes-carrying racks and that such conveyors have been in public use for more than one year prior to the filing date of the application which matured into the patent in suit. It is also admitted by plaintiff that the earliest date of conception of the subject matter of the patent in suit was sometime after October 15, 1959. Plaintiff's demonstration model which purported to simulate such early White conveyors showed that the angle bars (plates) substantially prevented tilting of the pins, yokes and racks. Plaintiff's expert witness Platt conceded this fact, too. Indeed, Platt also conceded that the early White conveyors with the angle bars (plates) were effective as compared with the accused White conveyors, although "not nearly as effective." The Court finds that the angle bars or plates in the White conveyor sold and publicly used in 1958 fully anticipate the sole asserted novel feature of the patented conveyor, as broadly defined in some of the claims, e. g., in claim 1:

"means mounted adjacent said upper portion of said rack and engageable therewith for counteracting said pulling force and thereby prevent the tilting of said upper portion."

13. The claims of U. S. Patent No. 3,010,584 are all for a combination of

individually old elements, each of which performs only the function which it performs in the prior art. No unusual or surprising result arises from the assembly of these old elements, all of which are present in substantially identical form in the early version of the White conveyor, pictured in defendants' Exhibit 1.

14. Inspection of the photograph, Exhibit A, accompanying the stipulation relating to the prior public use White angle bar device and forming a part of defendants' Exhibit 1, reveals that the angle plates or bars are adjustably mounted on the underside of the sprocket wheel. When each angle plate is positioned as close to the center of the wheel as possible, a limited amount of tilting of the rack members, pivot pins and trolley yokes will occur under the influence of heavy clothing loads. Such limited tilting, however, may be completely eliminated simply by loosening the two nuts and bolts securing each angle plate or bar, moving the plates slightly outwardly (away from the center of the sprocket wheel and toward the vertical rack members), and tightening all nuts and bolts.

15. The accused stud (shaft) and roller device does not infringe typical Claim 8, upon which plaintiff elected to stand or fall at the trial, since the roller thereof does not engage "the lower end of one of said pivot pins." Instead, the accused device follows the prior public use White angle bar (plate) device in that the roller directly engages a portion of the rack member. Specifically, the accused stud and roller device engages the lower hinge collar at the end of each individual rack member. The hinge collars in turn surround and directly engage the pivot (hinge) pins at each universal joint connection.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction under Titles 28 and 35 of the United States Code. Jurisdiction is not in issue.

2. Broader Claims 1, 2, 3 and 4 of U. S. Patent No. 3,010,584 are invalid as they are fully anticipated by the prior public use White conveyors with angle bars (plates) which were sold and used in this country more than 1 year before the filing date of the application which matured into the patent in suit. 35 U.S.C. § 102(b).

3. Narrower Claims 5, 6, 7 and 8 of the U. S. Patent No. 3,010,584 are invalid for the reason that the differences between the "rigid members" or engageable means recited in these claims and the angle bars (plates) of the White conveyors sold and publicly used in this country prior to the date of invention of the patent in suit are such that the claimed subject matter, taken as a whole, would have been obvious at the time the invention was made to a person having ordinary skill in the conveyor art. 35 U.S.C. § 103. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed. 2d 545 (1966).

4. Claim 8, which plaintiff represented as typical at the trial and upon which plaintiff elected to stand or fall, would not be infringed by defendants' accused stud and roller device. Claims 5 to 7 likewise are not infringed. Claims 1 to 4 would be infringed, but for the rule of law that an invalid patent claim cannot be infringed.

5. It is the opinion of this Court that it would be premature for it to exercise its discretion in deciding whether this is an "exceptional case" under 35 U.S.C. § 285, such that reasonable attorneys' fees should be awarded for defending against the charge of infringement with respect to U. S. Patent No. 3,010,584, since the Court is informed that plaintiff plans to appeal this decision and since the Court retains jurisdiction of this action as to the issues respecting plaintiff's U. S. Patents Nos. 3,118,531 and 3,152,682.

6. The Amended Complaint is hereby dismissed as to U. S. Patent No. 3,010,584, subject to the foregoing.