**RAILEX CORPORATION, Appellant,**
v.
**JOSEPH GUSS & SONS, INC.,**
and
**G. A. Braun, Inc., Appellees.**
No. 20479.

United States Court of Appeals
District of Columbia Circuit.

Argued March 13, 1967.

Decided July 13, 1967.

---

Mr. John M. Calimafde, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Messrs. Donald L. Dennison and Paul H. Blaustein, New York City, were on the brief, for appellant.

Mr. Thomas Cifelli, Jr., Newark, N. J., with whom Mr. William E. Hedges, New-ark, N. J., was on the brief, for appellees.

Before BAZELON, Chief Judge, FAHY* and BURGER, Circuit Judges.

BURGER, Circuit Judge:

Appellant appeals the dismissal of its patent infringement action to which Appellees asserted a defense of invalidity based on obviousness and anticipation. 35 U.S.C. §§ 102–03 (1964). The District Court found that claims 5 to 8 of the patented subject matter were anticipated by the real party defendant's [1] prior art device, and that while claims 1 to 4 of the patented subject matter were infringed by the real party defendant's accused machine, this infringement was nullified by the fact that an invalid patent cannot be infringed. 256 F.Supp. 994, 999 (D.D.C.1966).

Appellant's sole claim on appeal is that it was denied due process or a fair trial because the Trial Judge decided adversely to Appellant before it had presented a vital portion of its case, and because the Trial Judge failed to comprehend the thrust of Appellant's claims. No issue as to the merits is raised, but we feel compelled to discuss them in order to understand fully and resolve the due process claim.

The devices in question are the familiar two-level storage and delivery conveyors for clothing, frequently found in tailoring and dry-cleaning establishments. They are manufactured by Appellant and White Manufacturing Company. They are comprised of a continuous tubular rail consisting of a semicircular lower section, a semi-circular upper section, and parallel inclined sections joining the upper and lower curved sections. The movable part of the system consists of a series of racks hinged together, each of the racks being slotted to support the clothes hangers. The

---

* Circuit Judge Fahy became Senior Circuit Judge on April 13, 1967.

1. The Appellees here are nominal defendants, in that they are distributors for the real party defendant, White Manufacturing Company, a competitor of Appellant, who is openly defending this suit. For purposes of this appeal we will treat White Manufacturing Company as the defendant-appellee.

racks are suspended from yoke and pin assemblies. The yokes are "U" shaped and equipped with rollers which ride the upper portions of the tubular rail. The hinge pins extend downward from the yoke, hinging the ends of the adjacent racks together and acting as a universal joint for the racks as they move up the incline and around the curved ends of the rail.

The conveyors were first put on the market by these two manufacturers in 1958. Almost immediately, users began to experience severe problems. Rollers broke away from the conveyor, the yoke and rack assemblies became jammed on the curved portion of the rail, and the resulting jamming of the system caused motors to burn out. We need not discuss in detail the cause of these breakdowns. Suffice it to say that as the pins travelled around the upper section of the conveyor, they were subjected to complex three dimensional forces, in part due to the weight of the clothing on the inclined railing.

Appellant withdrew its original conveyor from the market in order to work on a solution to this problem. During a period of experimentation, White Manufacturing Company sold a conveyor equipped with a mechanism purporting to solve the problem. The parties stipulated as to the public use of this conveyor, and it was this stipulation which lead the District Judge to conclude that the patented device was anticipated. Basically, White's stipulated conveyor added an angle bar which was connected to a rim joining the sprocketed wheel spokes at the upper curved end of the conveyor, and which engaged the *upper section* of the clothes-carrying *rack*, exerting a radial, and possibly a tangential, force to prevent the tilting of the yoke and pin assembly.

After experimentation Appellant developed its patented conveyor with a modification that corrected the tangential and inward misalignment of the trolley yokes. The difficulty was eliminated by the application of uniform pressure on the entire system through the addition of a small bar attached to the bottom of the sprocket arm and extending downward until it abutted the *lower end* of the hinge pin connecting the racks. This applied a radial force which stabilized and aligned the hinge pin, which Appellant asserts was the principal cause of the difficulty.

Subsequent to the marketing of Appellant's patented conveyor, White abandoned the use of its angle bar modification and developed the accused device. In the accused device a stud extends down from the end of the sprocket wheel to which it is attached. Near the bottom of this stud is a roller which bears against the portion of the hinged collar surrounding the hinged pin which connects the racks, but does not bear directly against the pin itself.

Appellant elected to prove its infringement claim by witnesses and demonstrations on two conveyor machines. One exhibit was a portion of Appellant's original model, with interchangeable parts to show the patented conveyor. The other exhibit was a portion of a conveyor manufactured by White, with various detachable parts to show White's original model, the stipulated model, and the accused conveyor. Appellant elected to stand or fall on claim 8 of its patent, and, in particular, on the lack of structural difference between the patented and accused conveyors, and on their relative ability to solve the problem created by the original models.[2]

But apparently in anticipation of a defense of patent invalidity based on the stipulated prior art conveyor, Appellant's presentation of its case followed the philosophy that the best offense is a good defense and it appears that this tactic did not elude the District Judge. It introduced evidence showing the prob-

2. Most of the testimony is indicative of infringement. The witnesses testified that except for the point of attachment, the structure, function, and result of the patented and accused devices were identical. Appellee's defense undoubtedly would have related to the difference in point of attachment.

lem faced by the industry and the failure of the stipulated conveyor to solve this problem. For example, one witness testified that the stipulated angle bar did not extend down to the lower end of the pivot pin, nor did it even engage the pivot pins which connect the racks. Instead, it directly engaged the rack. Thus, while there was little difference between the patented device, which touched the lower portion of the pin, and the accused device, which touched the collar around the pin, the stipulated device offered no solution because it touched the center of the rack, not the pin, which was the source of the twisting forces creating the breakdown.

After certain demonstrations had been made and two witnesses heard, the District Judge ruled in favor of the Appellee on the basic of the stipulated conveyor. On appeal, Appellant raises no challenge on the merits. Instead, it claims it was not permitted to present a vital portion of its case, and that the District Judge denied Appellant a fair trial by his handling of the case.

■■ After the District Judge had ruled against Appellant, counsel made a proffer of certain evidence which was rejected. This evidence allegedly consisted of 1) a former Patent Office official's testimony that in his opinion the patent would have been granted even if the stipulated device had been known; [3] 2) testimony of Appellant's sales manager that the stipulated device did not

resolve the industry's problem; and 3) testimony of the officers of the White Manufacturing Company. We do not think it was a denial of a fair trial for the District Judge to refuse to accept this proffer after he had ruled against Appellant, particularly since it has not been shown that this evidence, assuming, *arguendo,* its admissibility, could have changed the ruling that Appellant's patent was 'invalid for lack of novelty and obviousness.

■■ Of course, it is implicit in the second aspect of Appellant's claimed due process denial that the ruling terminating the case was not based on lack of novelty or obviousness but rather was the culmination of a lack of comprehension of Appellant's case on the part of the District Judge. In support of this position, Appellant cites record references to show interference in the conduct of the case at crucial points, continued questions of the District Judge put to witnesses to determine what the "problem" was that necessitated solution, and claimed impatience and annoyance with the manner of presentation of Appellant's case. We have carefully examined the record and find no error which would lead us to disturb the result reached. In fact, portions of the record omitted by Appellant in its brief contradict its claim of error and, indeed, at one point when the District Judge was confused on one aspect, he readily admitted it and apologized to counsel.[4]

---

3. Although it is not shown in the record, the proffer of this testimony suggests that the stipulated prior art conveyor was *not* cited as a reference against the patent application for Appellant's conveyor, or if it was, certain representations were made about it by Appellant, as Appellee's answer to the original complaint states. Of course it is clear beyond doubt that while a duly issued patent is presumed valid, 35 U.S.C. § 282 (1964), that presumption is rebuttable particularly where the prior art was not available or considered by the Patent Office. *See e. g.,* Admiral Corp. v. Zenith Radio Corp., 296 F.2d 708, 712 (10th Cir. 1961).

4. Much of the initial confusion alleged by Appellant appears to be no more than the normal difficulties experienced in patent cases. In fact, the use of interchangeable parts on one machine to depict three different machines might well be the cause of some of this difficulty.

The District Judge soon realized the simplicity of the case and indeed made it clear to Appellant that its patent was presumed valid, that Appellant bore *only* the burden of proving infringement, and need not prove validity. Although it is not generally the province of the court to comment on the presentation of a case, we can not say that the District Judge was unjustified in informing Appellant's counsel that he was "overtrying" his case.

In essence, Appellant rests its case on the last ten pages of the record, covering the last few minutes of the trial. In particular, our attention is directed to the following dialogue:

THE COURT: You can't prove anything in light of this [the stipulation], in the Court's opinion.

MR. CALIMAFDE: Your Honor, that does not refer to the accused device. That refers to a thing which had been on the market, not the accused device.

THE COURT: It says represented.

MR. CALIMAFDE: Yes, but what is represented—

THE COURT: And that is the very thing we are talking about.

MR. CALIMAFDE: No. Your Honor. Your Honor, you have three things before you.

THE COURT: I know what I have before me. And I also know this: This [the stipulation] takes all the starch out of your arguments, to my way of thinking.

MR. CALIMAFDE: But, Your Honor—

THE COURT: And that is Defendant's Exhibit 1.

MR. CALIMAFDE: But Your Honor, there are three separate and distinct things. That is one. Something was on the market. Then that something did not solve the problem. And—

THE COURT: *I don't know what it is. It isn't before the Court.* (Emphasis added.)

MR. CALIMAFDE: Yes, Your Honor.

THE COURT: All the Court can do is interpret what I have read to you.

MR. CALIMAFDE: That is before the Court, Your Honor.

THE COURT: Yes.

Appellant claims that the italicized portion of the above shows the confusion of the District Judge. We cannot agree. This small portion of a lengthy discussion between counsel and the District Judge does not demonstrate that Appelland was denied a fair trial. It is true that various portions of the last few pages of the transcript appear confusing and are not entirely clear. But we have little doubt from a close examination of this record that the District Judge was, in effect, holding that the stipulated device anticipated the patented device, thereby rendering the patent invalid and precluding any claim of infringement. Indeed, this is expressly shown in earlier discussion with counsel for Appellee as well as Appellant's counsel. Thus we find no error with respect to Appellant's claimed denial of a fair trial. Although issues on the merits were not raised, we have discussed them in order to demonstrate the basis of our holding that there was no denial of a fair trial.

Affirmed.